UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>D-1 Jaiswan Williams,<br>D-2 Daquan Foreman,<br>D-3 Vanessa Hargrove,<br>D-4 Crystal Jenkins,<br><br>Defendants. | Case: 5:25−cr−20399<br>Assigned To : Levy, Judith E.<br>Referral Judge: Altman, Kimberly G.<br>Assign. Date : 5/22/2025<br>Description: INFO USA V. WILLIAMS ET AL (NA)<br><br>Violations:  18 U.S.C. § 1349<br>18 U.S.C. § 1956<br>18 U.S.C. § 1343 |

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At times relevant to this Information:

1. Telegram Messenger was a cloud-based instant messaging service that offered users the ability to send and receive end-to-end encrypted messages to users around the world. Telegram offered users the ability to create "channels" which allow certain users (channel administrators) to widely disseminate and broadcast messages to all Telegram users who are subscribed to the channel. Each Telegram

user had a handle or username that identified the user's account. The handle was preceded by an "@" symbol.

2.  "Slips" was a slang term for stolen or otherwise fraudulent checks.

3.  "Whole Foods Slipsss" and "Uber Eats Slips" were Telegram channels dedicated to the sale of stolen and fraudulent checks.

4.  The administrators of the "Whole Foods Slipsss" and "Uber Eats Slips" channels took photographs of stolen or otherwise fraudulent checks and posted redacted copies on the channels to market them for sale. Subscribers to the Telegram channels interested in buying checks would then send the channel's administrators a private message to arrange for purchase and delivery.

5.  Checks posted on Uber Eats had a maximum face value of $1500 and were offered for a standard price of $75 each, with an ongoing "BUY 4 get 1 FREE" promotion.  Checks posted on the Whole Foods Slipsss channel were higher-value, with certain checks having face values in the hundred-thousand-dollar range. Despite their face value, these higher-value checks were also sold for a deep discount, often pennies on the dollar.

6.  Customers would complete the purchase of a stolen or fraudulent check from the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels by sending electronic payments to the administrator(s).  These payments would be made using various applications, including Cash App, Apple Pay, and Bitcoin.

7. Cash App was a mobile payment service that is owned by Block, Inc., which allowed users to transfer money to one another using a mobile phone application. Each Cash App user had a handle or username that identified the user's account. The handle was known as a "CashTag" and preceded by an "$" symbol.

8. Apply Pay was a mobile payment service owned by Apple Inc. that provided similar functionality to Cash App.

9. Bitcoin was a decentralized payment system and peer-to-peer form of digital or electronic currency that used cryptography to record transactions in a decentralized, distributed ledger, called a blockchain.

10. **JAISWAN WILLIAMS,** *also known as* **"Ponyside"** was an administrator of the "Whole Foods Slipsss" Telegram channel who used the Telegram handle @Ponyside. At all times relevant to the Information, **WILLIAMS** was a resident of Oakland County, within the Eastern District of Michigan.

11. **DAQUAN FOREMAN,** *also known as* **"Faygoturn"** was an administrator of the "Uber Eats Slips" Telegram channel who used the Telegram handle @Faygoturn and the CashTag $bam1854. At all times relevant to the Information, **FOREMAN** was a resident of Wayne County, within the Eastern District of Michigan.

12. The defendant, **VANESSA HARGROVE** was an employee of the United States Postal Service and was employed as a Mail Processing Clerk at the

Detroit Processing & Distribution Center. **HARGROVE** used the CashTag $SecxiMe. At all times relevant to the Information, **HARGROVE** was a resident of Wayne County, within the Eastern District of Michigan.

13. The defendant, **CRYSTAL JENKINS** was an employee of the United States Postal Service and was employed as a Mail Processing Clerk at Dayton Processing & Distribution Center. **JENKINS** used the CashTag $Sweets93cheek. At all times relevant to the Information, JENKINS was a resident of Montgomery County, within the Southern District of Ohio.

## COUNT ONE
## 18 U.S.C. § 1349
### *(Conspiracy to Aid and Abet Bank and Wire Fraud)*

**D-1 JAISWAN WILLIAMS,**
**D-2 DAQUAN FOREMAN,**
**D-3 VANESSA HARGROVE,**
**D-4 CRYSTAL JENKINS**

14. The factual allegations in paragraphs 1 through 13 of this Information are re-alleged and incorporated as though fully set forth herein.

15. Beginning at least as early as October 23, 2022 and continuing until at least December 22, 2023, within the Eastern District of Michigan, and elsewhere, the defendants, **JAISWAN WILLIAMS, DAQUAN FOREMAN, VANESSA HARGROVE, and CRYSTAL JENKINS** did knowingly, intentionally, and voluntarily combine, conspire, confederate, and agree with one another and others

4

known and unknown to the Government, to commit the crime of aiding and abetting wire fraud in violation of Title 18, United States Code, Section 1343, and bank fraud in violation of Title 18, United States Code, Section 1344.

16. It was an object of the conspiracy that defendants, **JAISWAN WILLIAMS, DAQUAN FOREMAN, VANESSA HARGROVE, and CRYSTAL JENKINS**, and others known and unknown to the Government, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did, for the purpose of executing such scheme or artifice, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce (or, writings, signs, signals, pictures, and sounds); and did aid, abet, counsel, command, induce, and procure others known and unknown to the Government to do likewise; in violation of Title 18, United States Code, Section 1343.

17. It was also an object of the conspiracy that that defendants, **JAISWAN WILLIAMS, DAQUAN FOREMAN, VANESSA HARGROVE, and CRYSTAL JENKINS**, and others known and unknown to the Government, would and did knowingly execute and attempt to execute a scheme and artifice to obtain money under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations and promises; and did aid, abet, counsel,

command, induce, and procure others known and unknown to the Government to do likewise; in violation of Title 18, United States Code, Section 1344.

### PURPOSE OF THE CONSPIRACY

18. It was a purpose of the conspiracy for the defendants, **JAISWAN WILLIAMS, DAQUAN FOREMAN, VANESSA HARGROVE, and CRYSTAL JENKINS,** and other co-conspirators known and unknown to the Government, to unlawfully enrich themselves and others by, among other things, stealing, converting, and otherwise unlawfully obtaining checks and other negotiable instruments from the mail, and then selling them to individuals via Telegram, so that those individuals could use the stolen checks to obtain money and funds under the custody and control of those financial institutions by means of false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS OF THE CONSPIRACY

19. The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

20. It was a part of the conspiracy that co-conspirators, to include defendants **VANESSA HARGROVE and CRYSTAL JENKINS**, would and did use their positions as postal employees to steal checks and other negotiable instruments deposited into the mail. These included a large volume of IRS tax refund

checks, issued by the U.S. Treasury. The co-conspirators would then provide the stolen checks to defendants **JAISWAN WILLIAMS and DAQUAN FOREMAN**, in exchange for payment or the promise of payment.

21. It was also part of the conspiracy that defendants **JAISWAN WILLIAMSS and DAQUAN FOREMAN**, would take those checks and market them for sale on the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels. Subscribers to the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels would purchase those checks from the defendants using electronic payment platforms, including Cash App, Apple Pay, and Bitcoin. In posting the checks on Telegram and receiving payment via Cash App, Apply Pay, and Bitcoin transfers, the defendants used, and caused the use of, interstate wire communications during and in execution of the scheme. The defendants also transferred funds amongst one another using these same applications, again using and causing the use of interstate wire communications during and in execution of the scheme. The total face value of the checks posted to "Whole Foods Slipsss" and "Uber Eats Slips" during the time period covered by the Information was over $63 million.

22. It was a further part of the conspiracy that subscribers to the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels would then negotiate (and attempt to negotiate) those checks and deposit (and attempt to deposit) them at financial institutions in an effort to obtain money and funds under the custody and

7

control of those financial institutions by way of false and fraudulent pretenses, representations, and promises. Likewise, subscribers to the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels would use information found on the face of the purchased checks to create counterfeit checks which they would deposit and attempt to deposit at financial institutions in an effort to obtain money and funds under the custody and control of those financial institutions, again by way of false and fraudulent pretenses, representations, and promises.

All in violation of Title 18, United States Code, Sections 1349.

**COUNT TWO**
**18 U.S.C. § 1956**
***(Money Laundering)***

**D-1 JAISWAN WILLIAMS,**

23. The factual allegations contained in paragraphs 1 through 22 of this Information are re-alleged as though fully set forth herein.

24. Beginning on or about October 23, 2022 and continuing until at least December 22, 2023, within the Eastern District of Michigan and elsewhere, the defendant **JAISWAN WILLIAMS**, did knowingly conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce, including wire transfers into his Credit Union One account, which involved the proceeds of specified unlawful activity, that is wire fraud and bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise, the

nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity. Specifically, **WILLIAMS** used multiple CashApp accounts registered in the names of other individuals to (1) receive the proceeds of the fraud in the first instance, and (2) ultimately transfer the proceeds into his own account at Credit Union One.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT THREE
## 18 U.S.C. § 1343
### *(Wire Fraud)*

**D-1 JAISWAN WILLIAMS,**

25. Beginning at least as early as August 2020 and continuing through at least October 2021, in the Eastern District of Michigan and elsewhere, defendant **JAISWAN WILLIAMS**, with the intent to defraud, knowingly devised and executed a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations.

26. The purpose of the scheme was for **WILLIAMS** to enrich himself by unlawfully obtaining state and federal Pandemic Unemployment Assistance (PUA) benefits.

27. It was part of the scheme and artifice that **WILLIAMS** would submit and cause the submission of false and fraudulent claims for PUA benefits to multiple states, in his own name, with the knowledge that he was not entitled to those funds.

28. It was further part of the scheme and artifice that **WILLIAMS** would submit and cause the submission of false and fraudulent claims for PUA benefits to multiple states, in the name(s) of various other individuals without those individuals' knowledge or approval.

29. It was further part of the scheme and artifice that the fraudulent claims would cause the issuance of debit cards, onto which PUA benefits would be electronically loaded, and reloaded, at regular intervals by state government entities, based on false certifications as to the alleged claimants' ongoing unemployment. These electronic funds transfers caused the transmission of information, by wire, in interstate commerce. **WILLIAMS** would gain control of these debit cards and use them to access the fraudulently obtained PUA benefits.

30. On or about various dates beginning in or around August 2020 and continuing through at least October 2021 in the Eastern District of Michigan, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, **WILLIAMS** knowingly transmitted and caused the transmission by means of wire radio, or television communication in interstate or foreign commerce, various writings, signs, signal, pictures, and sounds. Specifically,

10

**WILLIAMS** used multiple debit cards loaded with fraudulent PUA benefits to make withdrawals at ATMs throughout the Eastern District of Michigan, with each electronic transfer of funds representing an interstate wire transmission in execution of the scheme and artifice to defraud; all in violation of 18 U.S.C. § 1343.

**FOREFEITURE ALLEGATION**
**18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c)**

31.  The allegations contained in Counts One and Three of this Information are re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

32.  Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1349 and 1343, set forth in Counts One and Three of this Information, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any and all property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

JEROME F. GORGON, JR.
United States Attorney

*s/ Ryan A. Particka*
RYAN A. PARTICKA
Chief, White Collar Crime Unit
Assistant United States Attorney

*s/ Darrin S. Crawford*
DARRIN S. CRAWFORD
Assistant United States Attorney

Dated: May 22, 2025

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number | 5:25−cr−20399 |
|---|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: RAP |

**Case Title:** USA v. Jaiswan Williams et al

**County where offense occurred:** Wayne and Oakland County

**Check One:** ☒ Felony  ☐ Misdemeanor  ☐ Petty

    ____Indictment/ ✓ Information --- **no** prior complaint.
    ____Indictment/____Information --- based upon prior complaint [**Case number:**    ]
    ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

### Superseding Case Information

**Superseding to Case No:** _____  **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

May 22, 2025
Date

s/ Ryan A. Particka
Ryan A. Particka
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9635
E-Mail address: Ryan.Particka@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.